**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMBER SCHWARTZ, *for herself and on behalf of all others similarly situated*, | : : : | |
| | : | Case No. 1:21-cv-03176 |
| Plaintiff, | : : | |
| v. | : : | AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| UBS FINANCIAL SERVICES, INC., | : : | |
| Defendant. | : : | |

Pursuant to the Court's directive (ECF 17), the Plaintiff, Amber Schwartz, ("Plaintiff") for herself and on behalf of all others similarly situated and by Counsel, files her Amended Class Action Complaint against Defendant UBS Financial Services, Inc., ("UBS") and alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.     Fifty years ago, Congress enacted the Fair Credit Reporting Act ("FCRA") to ensure the protection of consumer privacy and to limit consumer reporting agencies from recklessly disseminating consumers' personal and sensitive information. Recognizing the impact consumer reports can have on all aspects of life, including employment, Congress created stringent but simple requirements consumer reporting agencies must follow before releasing a consumer report for employment purposes to ensure consumers are properly notified of their rights and the content of their consumer reports. When consumer reporting agencies ignore their statutory obligations, consumers are deprived of the opportunity to decide who accesses their personal information, learn what is being reported about them, address any inaccuracies or even explain what is being reported. Consumer reporting agencies sell the reports, consumers and society pay the price for non-compliance.

2. In this action, Amber Schwartz, by and through her attorneys, and on behalf of herself and the putative classes set forth below, seeks to hold an employer accountable, and brings the following Class Action Complaint against Defendant including its related entities, subsidiaries, predecessors and successors, under the FCRA, 15 U.S.C. § 1681a–x.

3. The FCRA imposes several important requirements on employers that use a consumer report for employment purposes (commonly known as a "background check"), which are designed to protect consumers like Plaintiff.

4. Defendant UBS is a corporate entity that has its primary offices in New York, New York. UBS provides a number of banking and financial services to consumers across the country, and employs more than 34,000 individuals. It fills its staffing needs with consumers like Plaintiff. As part of its hiring processes, UBS and its subsidiaries use background checks to make employment decisions. Because such reports are governed by the FCRA, UBS is obliged to adhere to certain statutory requirements in accessing and using them.

5. Employer access to background checks is presumptively illegal and impermissible. To overcome this presumption, employers must disclose to applicants their intent to obtain such reports in a document that consists solely of the disclosure. Employers must then obtain consumers' written authorization to obtain the report.

6. Plaintiff brings nationwide class claims against UBS under 15 U.S.C. § 1681b(b)(2) because, as a systematic omission in its hiring process UBS failed to provide Plaintiff and other consumers with a stand-alone disclosure that a consumer report will be procured about them.

7. A statutorily compliant disclosure could be a simple statement as "we intend to obtain a consumer report about you for employment purposes." The statute demands nothing more. 15 U.S.C. § 1681b(b)(2).

8.      UBS's disclosure, on the other hand, is two pages of eye-straining type, contains multiple statements about the categories of information that may be obtained, lists several potential sources of information, sets out a litany of notices for employment candidates in California, among many other categories of information that make the document more than a stand-alone statement of UBS's intent to obtain a consumer report about the applicant.

9.      This failure means UBS illegally accessed thousands of consumer reports for employment purposes.

10.     Based on the foregoing violations, Plaintiff asserts FCRA claims against UBS on behalf of herself and a class consisting of consumers about whom UBS obtained consumer reports for employment purposes using a form similar in content to the one presented to Plaintiff.

11.     In Count I Plaintiff asserts a FCRA claim against UBS under 15 U.S.C. § 1681b(b)(2) on behalf of a "FCRA Disclosure Class" consisting of:

> **All natural persons in the United States who were the subject of a consumer report obtained by UBS pursuant to a Fair Credit Reporting Act disclosure form substantially similar to the form presented to Plaintiff, but who did not sign agreements to arbitrate claims with UBS, within five years of the filing of this lawsuit through the date of final judgment in this action.**

12.     On behalf of herself and the putative class, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

13.     Individual and class representative Amber Schwartz lives in Lake Zurich, Illinois. Plaintiff applied for employment with UBS in Lake Zurich but was rejected for employment based upon the contents of her consumer report.

14.     Plaintiff is a member of the putative Class defined above.

15.     Defendant UBS is an employer authorized to do business in Illinois.

16.     At all times pertinent to this Complaint, UBS was a user of "consumer reports" as defined in the FCRA.

### JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over Plaintiff's FCRA claims by virtue of Defendant's removal of the case to this Court. Plaintiff expresses no opinion as to whether this Court may retain subject matter jurisdiction over this matter.

18.     The Court has personal jurisdiction over Defendant because it markets and provides its services for use within this District and Division.

19.     Venue is tied to Defendant's removal of the case to this Court.

### ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

20.     Congress has recognized consumer reporting agencies have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

21.     In accordance with Congress's findings, an employer may only obtain a consumer report for employment purposes if it meets the requirements of Section 1681b(b)(2):

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
> > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

22.　　The FCRA requires that the disclosure be "in writing" in a stand-alone document.

23.　　The disclosure UBS provided to Plaintiff was buried in an 18-page application and contained unnecessary additional language.

24.　　As a result of its defective disclosure, UBS procured a consumer report for Plaintiff and other consumers without first obtaining a proper, written authorization to do so.

25.　　15 U.S.C. § 1681b(b)(2)(B) does not apply to Plaintiff because Plaintiff interviewed with UBS in person before UBS procured Plaintiff's consumer report from TransUnion.

26.　　Discovery will show that it is UBS's standard hiring practice to use a wordy disclosure which is not contained in a stand-alone document consisting solely of the disclosure.

27.　　Plaintiff values her privacy and would not, unless forced to by a prospective employer, share her background with anyone.

28.　　Had Plaintiff known at the time she authorized UBS to conduct the background check on her that UBS sought that authorization based on a disclosure form that may violate the FCRA, she would not have authorized UBS to conduct the background check.

<u>ALLEGATIONS SPECIFIC TO PLAINTIFF</u>

29.　　Plaintiff applied to work at UBS in Illinois in August 2020.

30.　　As part of its hiring process, UBS presented to Plaintiff an 18-page application package to review and sign in multiple places.

31.　　Buried in the middle of the package is a document entitled *Notice to Applicants Regarding Consumer Reports*, purportedly authorizing UBS to procure Plaintiff's consumer report for employment purposes.

32.     The *Notice to Applicants Regarding Consumer Reports* was presumably intended to serve as UBS's FCRA disclosure. However, the document was confusing, as it contains a host of unnecessary information regarding categories of information, companies from whom that information may be obtained, descriptions of the uses for the reports and potential users of them, notices to California applicants (of which Plaintiff is not one), and additional, unnecessary statements. Plaintiff had no basis for knowing which reporting agency was compiling her sensitive, personal information and providing it to UBS for employment purposes.

33.     Additionally, the *Notice to Applicants Regarding Consumer Reports* contained an impermissible liability waiver, which led Plaintiff to believe she had released UBS and anyone else from liability related to her background check.

34.     Had Plaintiff known that UBS would violate the law in obtaining and using her background check, she never would have signed the authorization documents.

35.     Based in its ineffective disclosure and authorization, UBS obtained a background check about Plaintiff in around August 2020.

36.     The background check included inaccurate credit history from Trans Union. Plaintiff brought the inaccuracies to UBS's attention, but it did no good. UBS believed the Trans Union information wholeheartedly, and would not credit anything Plaintiff offered in response.

37.     UBS strung Plaintiff along for three months before finally determining that it would not hire her based on the information in the report it obtained about her.

### PLAINTIFF'S CONCRETE HARM

38.     UBS violated Plaintiff's right to privacy by obtaining her personal, private and sensitive information without meeting the statutory threshold for accessing that information. Only

by using a stand-alone disclosure can employers like UBS overcome the statutory presumption that trafficking in consumer reports is illegal.

39.     The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural. The violation alleged here is not some mere technical requirement—without providing Plaintiff with a stand-alone disclosure, UBS had no statutory permission to obtain a report about Plaintiff.

40.     This improper obtaining of a report harmed Plaintiff by invading her privacy—UBS accessed Plaintiff's private, personal information without a lawful reason for doing so.

41.     Protection of consumer privacy is one well-recognized aspect of the FCRA, and the statutory provisions violated here have been part of the FCRA since its enactment in 1970.

42.     Plaintiff and the putative class members have a common-law right to keep their personal information from being distributed and used without their knowledge. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other." Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the FCRA expresses Congress's finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

43.     UBS invaded Plaintiff's and the putative class members' right to privacy when it obtained their highly confidential personal information without a statutory basis for doing so.

44.     UBS's failure to appropriately disclose its intent to obtain consumer reports injured Plaintiff in that (1) her privacy was unlawfully invaded by UBS's accessing of background reports about her without statutory permission; and (2) Plaintiff suffered an informational injury—by not

obtaining a proper disclosure of UBS's intent to obtain her consumer report for employment purposes.

45.     UBS's conduct is precisely the type that Congress sought to prevent—protection of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information.

46.     Plaintiff and the putative class members therefore suffered a concrete, in-fact injury that is directly traceable to UBS's conduct and that is likely to be redressed by a favorable decision here.

47.     UBS violated Plaintiff's right to privacy by accessing her personal, private and confidential information without abiding by the statutory safeguards permitting it to access that information.

48.     UBS rejected Plaintiff for employment based in whole or in part on the contents of her consumer report, which it obtained without a statutory basis for doing so.

49.     If Plaintiff had known UBS was accessing her consumer report without a legal right to do so, Plaintiff would not agree to have UBS obtain her consumer report.

### DEFENDANT ACTED WILLFULLY

50.     UBS knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

51.     UBS obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

52.     Before employers obtain consumer reports for employment purposes, they must provide consumers with a stand-alone document disclosing the intent to obtain such reports. 15 U.S.C. § 1681b(b)(2).

53.     Section 1681b(b)(2)(A) "establishes a right to specific information in the form of a clear and conspicuous disclosure. The statutory requirement that the disclosure be made in 'a document that consists solely of the disclosure' helps to implement the textual command that the disclosure be clear and conspicuous." *Thomas v FTS USA, LLC*, 2016 U.S. Dist. LEXIS 85545, *18–19 (E.D. Va. June 30, 2016).

54.     Section 1681b(b)(2)(A) also "establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances." *Id*. at *19.

55.     The protections established by § 1681b(b)(2)(A) and by § 1681b(b)(3) "are clearly substantive, and neither is technical nor procedural." *Id*. at 19.

56.     Defendant's unnecessarily wordy, confusing, and complex disclosure violated a clear, easy-to-follow statutory mandate that the disclosure be standalone. 15 U.S.C. § 1681b(b)(2).

57.     Not only did the document contain a host of confusing, unnecessary information, the disclosure contained an impermissible liability waiver. Courts have roundly held that the inclusion of such waivers sufficiently establishes a plausible claim for willfulness, including some that have held it establishes willfulness as a matter of law even at the pleadings stage. *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176 (9th Cir. 2019); *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017); *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 870 (N.D. Cal. 2015); *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333 (S.D.N.Y. 2015); *Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-cv-3035-T-26TBM, 2015 WL 1456981, at *2 (M.D. Fla. Mar. 30, 2015); *Milbourne v. JRK Residential Amer., LLC*, No. 3:12-cv-861, 2015 WL 1120284,

at *4–5 (E.D. Va. Mar. 11, 2015); *Avila v. NOW Health Group, Inc*., No. 14-C-1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014); *Singleton v. Domino's Pizza, LLC*, No. 11-1823, 2012 WL 245965, at *7–9 (D. Md. Jan. 25, 2012); *Reardon v. Closetmaid Corp.*, No. 2:08-cv-1730, 2013 WL 6231606, at *10–11 (W.D. Pa. Dec. 2, 2013); *EEOC v. Video Only, Inc*., No. 06-1362-KI, 2008 WL 2433841, at *11 (D. Or. June 11, 2008).

58.  These decisions are of sufficient age and breadth to provide UBS with adequate notice that the continued use of its disclosure form ran a risk of violating the FCRA substantially greater than the risk associated with a reading of the statute that was merely careless.

59.  That is because not only does Section 1681b(b)(2)'s plain language demand that nothing beyond the disclosure (with one narrow exception) appear on that document, but the Federal Trade Commission has held to that same standard for decades. Fed. Tr. Comm'n, Staff Opinion Letter from Haynes to Hauxwell, 1998 WL 34323756, at *1 (June 12, 1998) (stating that inclusion of a waiver in a disclosure form violates Section 1681b(b)(2)(A)); Fed. Tr. Comm'n, Opinion Letter from Medine to Coffey, 1998 WL 34323748, at *2 (Feb. 11, 1998) (noting that disclosure may describe the "nature of the consumer reports" it covers, but otherwise should "not be encumbered with extraneous information"); Fed. Tr. Comm'n, Staff Opinion Letter from Haynes to Hawkey, 1997 WL 33791224, at *1 n.3 (Dec. 18, 1997)  ("Nothing else may appear on the document that detracts from the disclosure required by Section [1681b(b)(2)(A)].").

60.  UBS was aware of these court decisions and F.T.C. guidance and has had years to become compliant, yet has not.

61.  Given this amount of on-point discussion, authority, and guidance of which UBS was aware and the substance of which it knew, it was objectively unreasonable for UBS to bury the disclosure in the middle of an 18-page set of application materials, include a trove of

unnecessary information in the disclosure, and further to include an impermissible liability waiver in the disclosure.

62.     UBS is no stranger to the FCRA's employment-related requirements for another reason. In 2014, UBS was sued for the same problems with its background check disclosure as Plaintiff alleges here. *Plasters v. UBS Fin. Servs., Inc.*, No. 2:14-cv-01659-WJM-MF (D.N.J.). The plaintiff in *Plasters* identified similar shortcomings with UBS's lack of a standalone disclosure, including the improper inclusion of a release in that document. *Plasters*, No. 2:14-cv-01659, ECF 1 ¶¶ 14–17.

63.     While the court in *Plasters* did not render a decision on whether the disclosure violated Section 1681b(b)(2), that case put UBS on notice of a potential problem, and UBS appears to have let more than seven years pass without taking a closer look at its disclosure and bringing it into compliance with the statute's simple instructions.

64.     Plaintiff has suffered a concrete informational injury because UBS failed to provide Plaintiff with information to which she was entitled by statute. Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure.

65.     Such a disclosure was required to be provided to Plaintiff before the consumer report was to be procured. Indeed, the disclosure that was provided lacked the basic information required by the FCRA be disclosed by employers to consumers. By depriving them of this information, UBS injured Plaintiff and the putative class members. *Public Citizen v. United States Dept. of Justice*, 491 U.S. 440 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998).

66.     By failing to provide Plaintiff and the Putative Class Members that she seeks to represent with a clear and conspicuous disclosure in writing in a document that consists solely of

the disclosure that a consumer report may be obtained for employment purposes as required by § 1681b(b)(2)(A), UBS denied Plaintiff and the Putative Class Members information to which they were specifically entitled under the FCRA.

67.     By procuring the consumer reports of Plaintiff and the Putative Class Members that she seeks to represent in this matter without making the disclosure required by § 1681b(b)(2)(A), UBS has unlawfully invaded Plaintiff's and the Putative Class Members' rights of privacy created by the FCRA. *See Thomas*, 2016 U.S. Dist. LEXIS 85545, at *32–33. ("Thomas . . . has alleged that Defendants invaded the statutory right to confidentiality of his personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent, as required by § 1681b(b)(2)(A). This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing.").

68.     As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc*., 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015). Plaintiff's report contained a wealth of private information which UBS had no right to access absent a specific Congressional license to do so. The report included, among other things, Plaintiff's date of birth, address history, social security number, and information about her credit history. By procuring a report containing this private information without complying with Section 1681b(b)(2)'s requirements, UBS illegally invaded Plaintiff's privacy.

69.     The invasion of privacy exists regardless of the fact that a consumer may have signed the authorization form, and regardless of the accuracy of any information in the resulting

consumer report. The violation occurs when UBS obtains a consumer report based on the defective disclosure form, and every time UBS does so.

70.     The informational injuries and the breach of privacy injury suffered by Plaintiff and the Putative Class Members as a result of UBS's violations of § 1681b(b)(2)(A) are particularized because those injuries happened to Plaintiff and each Putative Class Member.

71.     The informational injuries suffered by Plaintiff and the Putative Class Members as a result of UBS's violations of § 1681b(b)(2)(A) are real and concrete because "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury [and] [b]y extension, it is well within Congress' power to specify the form in which that information must be presented." *Thomas*, 2016 U.S. Dist. LEXIS 85545 at *27–28; *see also id*. at *36.

72.     The invasion of privacy injury suffered by Plaintiff and the Putative Class Members as a result of UBS's violations of § 1681b(b)(2)(A) is real and concrete because "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue" and Congress has extended the right of privacy to information contained within one's consumer report. *Id.* at *30–31.

73.     Despite knowledge of these legal obligations, UBS acted consciously in breaching its known duties and depriving the Plaintiff and Putative Class Members of their rights under the FCRA.

74.     As a result of these FCRA violations, UBS is liable to Plaintiff and to each Putative Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A),

plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorneys' fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff asserts a claim against UBS on behalf of a "Disclosure Class," defined as:

**All natural persons in the United States who were the subject of a consumer report obtained by UBS pursuant to a Fair Credit Reporting Act disclosure form substantially similar to the form presented to Plaintiff, but who did not sign agreements to arbitrate claims with UBS, within five years of the filing of this lawsuit through the date of final judgment in this action.**

76.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23 because: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) Plaintiff and her Counsel will fairly and adequately protect the interests of the class; and (4) common questions predominate over individual ones, and the class action is the superior method for the fair and efficient adjudication of the controversy.

77.     **Numerosity.** The members of the putative class are so numerous that joinder of all class members is impracticable. UBS obtained consumer reports over an extended period of time, for applicants for positions across the United States. UBS regularly uses consumer reports in its hiring process. Plaintiff is informed and believes that during the relevant time period, thousands of employees and prospective employees, if not tens of thousands, satisfy the definition of the putative class. Based on the number of putative class members and their geographic disbursal, joinder is impracticable. The names and addresses of the putative class members are identifiable through UBS's records and putative class members may be notified of this action by mailed notice.

78.     **Predominance of Common Questions of Law or Fact.** Class treatment is also appropriate because questions of law or fact common to the putative Class Members predominate

14

over any questions affecting only individual members of the putative Class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. UBS's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Such common questions include, among others:

      a.      whether Defendant obtained consumer reports for employment purposes without properly disclosing the intent to obtain such reports, as described in 15 U.S.C. § 1681b(b)(2), before obtaining such reports;

      b.      whether Defendant's violations of the FCRA were willful;

      c.      the proper measure of statutory damages; and

      d.      the proper form of relief.

79.      Members of the putative Class do not have an interest in pursuing separate actions against UBS, as the amount of each putative class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

80.      This case is further maintainable as a class action because prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for UBS. Further, adjudication of each individual putative class member's claim as separate action would potentially be dispositive of the interests of other individuals not a party to such action, thereby impeding their

ability to protect their interests.

81.     This case is also maintainable as a class action because UBS acted or refused to act on grounds that apply generally to the putative Class.

82.     Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. UBS's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative class do not have an interest in pursuing separate actions against UBS, as the amount of each putative class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

83.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the putative Class, and has retained Counsel experienced in complex class action litigation, including nationwide class actions pressing claims under the FCRA.

84.     **Superiority of Class Treatment.** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to

effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

## CLAIMS FOR RELIEF

**COUNT I – FCRA Violation**
**Failure to Provide Stand-alone Disclosure Prior to Obtaining a**
**Consumer Report for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(2)**

85.     UBS willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided consumer reports about Plaintiff and putative class members, which were used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3).

86.     UBS invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer report without a permissible purpose.

87.     UBS caused Plaintiff injury because the report UBS furnished was used, in whole or in part, as the basis for an adverse employment action.

88.     UBS caused Plaintiff injury because UBS permitted the user of its consumer reports to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes by failing to require UBS to certify compliance therewith.

89.     The forgoing violations were willful. At the time UBS violated 15 U.S.C. § 1681b(b)(1)(A), UBS knew it was required to certify compliance with 15 U.S.C. § 1681b(b)(2) before obtaining consumer reports for employment purposes and certify it would comply with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable. UBS's willful conduct is also reflected by, among other things, the following facts:

        a.      UBS knew of potential FCRA liability;

        b.      UBS is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

        c.      The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

        d.      UBS knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

        e.      UBS voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

90.     Plaintiff and the Disclosure Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

91.     Plaintiff and the Disclosure Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

### COUNT II – FCRA Violation
### Impermissible Use of Consumer Reports in Violation of 15 U.S.C. § 1681b(f)

92.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

93.     UBS's failure to provide members of the Disclosure Class with a clear and conspicuous FCRA disclosure contained in a stand-alone document consisting only of the disclosure violated 15 U.S.C. § 1681b(b)(2)(A).

94.     Because UBS's disclosures fail to comply with the FCRA, then the written authorizations to obtain background checks are void.

95.     Thus, UBS routinely obtains background checks for employment purposes without the written authorization to do so as required by the FCRA.

96.     As a result of its defective disclosure, UBS procured consumer reports for members of the Disclosure Class for employment purposes without first obtaining a proper, written authorization to do so, in violation of 15 U.S.C. § 1681b(b)(2)(A).

97.     UBS's obtaining and use of Putative Class Member's consumer reports without compliance with § 1681b(b)(2)(A) violates 15 U.S.C. § 1681b(f).

98.     The conduct, action, and inaction of UBS were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

99.     Plaintiff and other members of the Disclosure Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from UBS in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

100.    The forgoing violations were willful. At the time UBS violated 15 U.S.C. § 1681b(b)(2), UBS knew it was required to provide a stand-alone disclosure of its intent to obtain consumer reports about applicants, yet it did not. UBS's willful conduct is also reflected by, among other things, the following facts:

            a.      UBS knew of potential FCRA liability;

      b.    UBS is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

      c.    The FCRA's stand-alone disclosure requirement is clearly spelled out in the plain language of the statute;

      d.    UBS knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      e.    UBS voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

101.    Plaintiff and the Disclosure Class are therefore entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

102.    Plaintiff and the Disclosure Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the Putative Disclosure Class pray for relief as follows, in the form of an order:

      a.    determining that this action may proceed as a class action;

      b.    designating Plaintiff as class representative and designating Plaintiff's Counsel as counsel for the putative class;

      c.    requiring notice to the putative class at UBS's expense;

      d.    finding that UBS committed multiple, separate violations of the FCRA;

      e.    finding that UBS acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

      f.  awarding statutory damages as provided by the FCRA, including punitive

          damages, to members of the putative class; and

      g.  awarding reasonable attorneys' fees and costs as provided by the FCRA.

Plaintiff and the putative Class hereby demand a trial by jury on all issues so triable.

Dated: August 11, 2021.                Respectfully submitted,

s/Douglas M. Werman
Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
(312) 419-1008
Email: dwerman@flsalaw.com
Email: msalas@flsalaw.com

Craig C. Marchiando (*pro hac vice forthcoming*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660
Email: craig@clalegal.com

Brandon J. Hill
IARDC Number: 6300021
Luis A. Cabassa
Florida Bar Number: 0053643 (*pro hac vice forthcoming*)
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
(813) 224-0431
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

***Attorneys for Plaintiff***